**2014-1454**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

THE TIMKEN COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES, NTN BEARING CORPORATION OF AMERICA, NTN-SNR ROULEMENTS S.A., SNR BEARINGS USA, INC.,

Defendants-Appellees,

MYONIC GMBH, NEW HAMPSHIRE BALL BEARINGS, INC.,

Defendants,

SCHAEFLER ITALIA S.R.L., SKF USA INC., SKF INDUSTRIE S.P.A., SOMECAT S.P.A.,

Defendants-Appellees.

Appeal from the United States Court of International Trade in case nos. 12-cv-00415, 12-cv-00416, 12-cv-00417, Judge Jane A. Restani.

**BRIEF FOR DEFENDANTS-APPELLEES**
**NTN BEARING CORPORATION OF AMERICA, NTN-SNR ROULEMENTS S.A., SNR BEARINGS USA, INC.**

Kevin O'Brien
Diane MacDonald

Baker & McKenzie
300 E. Randolph Street
Suite 5000
Chicago, IL 60657
(312) 861-8000
diane.macdonald@bakermckenzie.com

*Attorneys for Defendants-Appellees NTN Bearing Corp. of America; NTN-SNR Roulemenets S.A.; SNR Bearings USA, Inc.*

Sept. 11, 2014

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

| The Timken Company | v. | United States |

No. 2014-1454

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) appelle (amicus) (name of party) NTN Bearing Corporation o4 America NTN-SNR Roteaments, Inc A SNR Bearings USA certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

NTN Bearing Corporation of America
NTN-SNR Roulements, S.A.
SNR Bearings USA, Inc. (collectively, "NTN-SNR")

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
N/A. NTN-SNR is the real party in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NTN Corp., a Japanese public corporation, is the parent company of NTN-SNR Roulements, S. A. and NTN Bearing Corporation of America. SNR Bearings USA, Inc. was owned by NTN-SNR Roulements; the company is now dissolved.

4.  12  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Baker & McKenzie LLP: Kevin M O'Brien; Diane A. MacDonald

| September 11, 2014 | /s/ Diane MacDonald |
| Date | Signature of counsel |
| | Diane MacDonald |
| | Printed name of counsel |

Please Note: All questions must be answered
cc:

129

## TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................... 1

STATEMENT OF FACTS .................................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................... 2

ARGUMENT ......................................................................................................... 2

CONCLUSION ...................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*CP Kelco Oy v. United States,*
   978 F. Supp. 2d 1315 (Ct. Int'l Trade 2014) ........................................................ *1*

*DuPont Teijin Films USA v. United States,*
   407 F.3d 1211 (Fed. Cir. 2005) ............................................................................ 6

*JTEKT Corp. v. United States,*
   717 F. Supp. 2d 1322 (Ct. Int'l Trade 2010) ........................................................ 6

*SKF USA, Inc. v. United States,*
   537 F.3d 1373 (Fed. Cir. 2008) ............................................................................ 6

*The Torrington Company v. United States,*
   68 F.3d 1347 (Fed. Cir. 1995) .............................................................................. 6

*Timken Co. v. United States,*
   Slip Op. 14-51 ....................................................................................................... 1

**STATUTES**

19 U.S.C. § 1677f-1(d)(1)(B) .................................................................................. 5

19 U.S.C. § 1677f-1(d)(2) ........................................................................................ 5

**OTHER AUTHORITIES**

*2010/2011 Reviews of the Antidumping Duty Orders on Ball Bearings and Parts Thereof from France, Germany, and Italy: Post-Preliminary Analysis and Calculation Memorandum,* at 3, (Dep't Commerce Oct. 16, 2012) ................................................................................................................... 4

*Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification,* 77 Fed. Reg. 8,101 (Dep't Commerce Feb. 14, 2012) *("Final Modification in Reviews")* ....................................................................... 3, 6

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of the U.S. Court of Appeals for the Federal Circuit, counsel for defendant-appellees NTN Bearing Corp. of America, NTN-SNR Roulements S.A., and SNR Bearings USA, Inc. states the following: There are no other appeals from this action in this Appellate Court or in other Appellate Courts. Two unrelated review actions pending in, or recently decided by, the Court of International Trade may be affected by the Court's decision in this case: *Timken Co. v. United States,* Slip Op. 14-51 (remanded), and *CP Kelco Oy v. United States,* 978 F. Supp. 2d 1315 (Ct. Int'l Trade 2014).

## STATEMENT OF FACTS

Defendant-appellees NTN Bearing Corporation of America, NTN-SNR Roulements S.A., and SNR Bearings USA, Inc. (collectively "NTN") agree with Timken's statement of facts, with the exception of the subsection entitled "Applying the Nails Test." In that section, Timken states as fact the question at issue in this case: whether or not Commerce's methodology (the "Nails" test) revealed a pattern of significant price differences. NTN disagrees that the Nails test revealed such a pattern.

## SUMMARY OF THE ARGUMENT

Commerce has the discretion to determine that, when only a *de minimis* number of sales pass the test used to determine whether Commerce should depart from its default methodology, the required pattern that would support a departure from the default methodology does not exist. In so deciding, Commerce did not depart from a prior policy, because the application of the test to an administrative review was a new methodology and, therefore, no prior policy existed. Commerce's discretion in this regard was reasonable and supported by statute.

## ARGUMENT

Plaintiff The Timken Company's ["Timken"] argument boils down to this: it disagrees with the discretion granted to the Department of Commerce ["Commerce"] by statute to develop a new antidumping methodology based on a fundamental change in U.S. antidumping policy that resulted from litigation in the World Trade Organization. Timken does not argue that Commerce's decision was unreasonable. Instead, Timken argues that Commerce departed from "several prior decisions," while failing to recognize that this was a new policy for administrative reviews. Because no policy (longstanding or otherwise) existed for administrative reviews, and because Commerce reasonably used the discretion permitted by statute in crafting a new methodology, this Court should affirm the judgment of the Court of International Trade.

2

The Preliminary Results in this case incorporated a new methodology that Commerce announced would apply to administrative reviews, which methodology the United States developed in early 2012 after a decade of litigation at the World Trade Organization and after negotiations with its trading partners. *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification,* 77 Fed. Reg. 8,101 (Dep't Commerce Feb. 14, 2012) *("Final Modification in Reviews").*

Per the *Final Modification in Reviews,* except where Commerce determines that a different comparison methodology is more appropriate, Commerce will compare monthly weighted-average export prices with monthly weighted-average normal values, and will grant an offset for all such comparisons for which export price exceeds normal value. *Id.* at 8,102. That is, Commerce will use as its default methodology an "average-to-average" comparison and will not use the "zeroing" procedure (that is, it will grant offsets for non-dumped comparisons).

Similar to an earlier modification of its methodology in antidumping *investigations,* in the *Final Modification in Reviews,* Commerce stated that it will determine, on a case-by-case basis and using the same criteria it used in investigations, when it is appropriate to use an "alternative" comparison methodology, without stating what that alternative would be. *Id.*

Notwithstanding its analysis in the Preliminary Results, and more than four months after these Results, Commerce issued a "Post-Preliminary Determination," in which Commerce undertook a "targeted dumping" analysis to determine if it should depart from the default methodology expressed in the *Final Modification.* In doing so, Commerce used the so-called "Nails" test, *(see Brief for Plaintiff-Appellant The Timken Company ["Timken Brief"],* at 9, n. 4), to determine if pricing patterns existed.

The results of this targeted analysis were that, for NTN-SNR, Commerce found a pattern of export prices that was "insufficient" to consider deviating from its now-standard average-to-average comparison methodology. *2010/2011 Reviews of the Antidumping Duty Orders on Ball Bearings and Parts Thereof from France, Germany, and Italy: Post-Preliminary Analysis and Calculation Memorandum,* at 3, (Dep't Commerce Oct. 16, 2012) *("Post-Preliminary Analysis").* JA 3602. Commerce therefore continued to use its default average-to-average methodology for calculating the weighted-average dumping margin for NTN-SNR. Parties submitted comments and, on December 4, 2012, Commerce issued its Final Results, in which it did not change any decisions made in the Post-Preliminary Results.

Commerce concluded that a "sufficient volume" of U.S. sales was needed to establish a pattern of targeted dumping and to deviate from the default methodology. Commerce determined that when only a tiny subset of the database

4

passes the Nails Test, this subset cannot constitute a pattern for purposes of the statute. If, for example, out of a set of 10,000 seller/buyer combinations, Commerce used a test in which subset of only three such combinations passed the test, the result would simply be too small to implicate a "pattern" in the larger set and no further investigation is warranted. The resulting subset may equally have been the result of a random occurrence and further detailed mathematical analysis would be needed to determine whether a pattern actually exists. It is reasonable for Commerce to conclude that the resulting subset is simply too small to be the result of a pattern for purposes of this administrative review or to warrant further analysis. If, however, the methodology produced a subset of, say, 900 combinations, that result may indicate that a pattern exists, in which case further investigation or action would be warranted.

      Moreover, Commerce's decision to make that determination is grounded in the discretion provided by the statutory scheme. As Timken correctly notes, the statute that prescribes the "targeted dumping" exception, 19 U.S.C. § 1677f-1(d)(1)(B), applies to antidumping *investigations. Timken Brief* at 5. The statute applicable to administrative *reviews,* 19 U.S.C. § 1677f-1(d)(2), however, makes no mention of targeted dumping. Commerce reasonably concluded that, in the context of this review, where there are thousands of different sales and thousands of different bearing models, when the Nails test results in a miniscule data set, a

5

pattern of differential pricing does not exist and the default methodology should prevail.

This threshold test is independent of the Nails Test. Contrary to Timken's assertions, the pattern requirement is not addressed solely by application of the Nails Test, and Commerce's reliance on a *de minimis* threshold before finding the required pattern is reasonable. As this Court is aware, Commerce is accorded substantial deference in interpreting an antidumping statute that is ambiguous on a particular issue. *See e.g., SKF USA, Inc. v. United States,* 537 F.3d 1373, 1379 (Fed. Cir. 2008); *DuPont Teijin Films USA v. United States,* 407 F.3d 1211, 1215 (Fed. Cir. 2005); *The Torrington Company v. United States,* 68 F.3d 1347, 1351 (Fed. Cir. 1995); *JTEKT Corp. v. United States,* 717 F. Supp. 2d 1322, 1329 (Ct. Int'l Trade 2010) (vacated and remanded on other grounds). Particularly in this case, where there are thousands of sales and hundreds, if not thousands, of bearing models, Commerce's interpretation that the Nails test must result in more than a *de minimis* volume of U.S. sales is a reasonable interpretation of the statutory requirement for administrative reviews. Commerce simply determined that that small subset could not constitute a pattern and nothing in the statute requires Commerce to conclude otherwise.

The *Final Modification in Reviews* represented a major change in U.S. antidumping methodology and it came about after years of litigation in the World

6

Trade Organization and after discussion and consultation among U.S. legislative and executive trade policymakers. And, as Timken notes, the administrative review at issue in this case was one of the first in which Commerce applied the Nails test in an administrative review. Additionally, Commerce's methodology in this review was a substantial departure from the methodology used in the previous twenty-one reviews of this case or from the methodology used in any administrative review in any case up to approximately the time of the determination. There were, therefore, no prior decisions or longstanding interpretations from which Commerce is alleged to have departed. No statute requires Commerce to apply the Nails test in administrative reviews in the same manner that it applies it in investigations and Commerce had no policy for doing so. Moreover, even if there had been a policy with respect to investigations, the circumstances of an annual review are different from those of an investigation and the statute allows Commerce the discretion whether, and how, to decide to depart from its default methodology. Commerce's decision not to depart from the default methodology in this case was therefore reasonable and in accordance with law.

## CONCLUSION

For the reasons set forth above, NTN respectfully requests that this Court affirm the judgment of the Court of International Trade that affirmed Commerce's determination.

Respectfully submitted,

/s/ Diane MacDonald

Kevin O'Brien
Diane MacDonald

Baker & McKenzie
300 E. Randolph Street
Suite 5000
Chicago, IL 60657
(312) 861-8000
diane.macdonald@bakermckenzie.com

*Attorneys for Defendants-Appellees NTN Bearing Corp. of America; NTN-SNR Roulemenets S.A.; SNR Bearings USA, Inc.*

Dated: Sept., 11, 2014

# **Proof of Service**

I certify that on September 11, 2014, copies of NTN-SNR's response brief were electronically served via the Court's CM/ECF system upon the following parties:

**On behalf of the United States:**
Tara K. Hogan, Esq.
US Department of Justice
Commercial Litigation Branch, Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
tara.hogan@usdoj.gov

**On behalf of The Timken Company:**
Geert De Prest
Stewart and Stewart
2100 M Street, N.W., Suite 200
Washington, D.C. 20037
gdeprest@stewartlaw.com

**On behalf of SKF Group Companies:**
Herbert C. Shelley
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036
hshelley@steptoe.com

**On behalf of the Schaeffler Group:**
Max F. Schutzman
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
399 Park Avenue
25th Floor
New York, NY 10022
mschutzman@gdlsk.com

/s/ Diane MacDonald
Diane MacDonald

## **Certificate of Compliance**

This brief has been prepared using Microsoft Word 2010 and a proportionally-spaced typeface (14-point, Times New Roman font).

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that this brief complies with the requirement of Fed. R. App. P. 32(a)(7)(B)(i). Specifically, including all pages, this brief contains 2,102 words. In accordance with Fed. R. App. P. 32(a)(7)(C), this certified word count is based on the word count feature in the Microsoft Word system that was used to prepare this brief.

/s/ Diane MacDonald

Diane MacDonald

Baker & McKenzie
300 E. Randolph Street
Suite 5000
Chicago, IL 60657
(312) 861-8000
diane.macdonald@bakermckenzie.com

*Attorney for Defendants-Appellees NTN Bearing Corp. of America; NTN-SNR Roulemenets S.A.; SNR Bearings USA, Inc.*

Sept. 11, 2014